IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EUGENE BLACKMON | § | |
|     TDCJ-CID #485431 | § | |
| v. | § | C.A. NO. C-08-273 |
| | § | |
| WARDEN KUKUA, ET AL. | § | |

## ORDER RETAINING CASE

This case is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Plaintiff's allegations of excessive heat and faulty plumbing at the Garza East Unit successfully raise unconstitutional conditions of confinement claims pursuant to the Eighth Amendment so as to survive § 1915A screening. Accordingly, service will be ordered on the named defendants as set forth herein.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff, (D.E. 18), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment pursuant to 28 U.S.C. § 636(c). (D.E. 19).

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division and is currently incarcerated at the Garza East Unit in Beeville, Texas. He filed his original complaint on August 1, 2008, and named as defendants the following five Garza East Unit officials and employees: (1) Diana Kukua, Senior Warden; (2) Exiquio Garza, Assistant Warden; (3) Mark Garza, Maintenance Supervisor; (4) Oliver Esparza, Maintenance Security Officer; and (5) R. Tucker, Mailroom Supervisor.

A Spears[1] hearing was conducted on September 3, 2008. The following allegations were made in plaintiff's original complaint, or at the hearing:

Plaintiff complains that the Garza East Unit ventilation system for the dorms does not work well, and that the dorms are over-crowded. From April through September 2008, the combined conditions of poor ventilation and over-crowding resulted in excessive heat, with measured dorm temperatures of 108 degrees, day and night, and a heat index of 115 degrees. Plaintiff claims that it is so hot some nights that he cannot sleep. In addition, on March 8, 2008, he was diagnosed with a Staph infection that he asserts he contracted, in part, as a result of living

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

in the over-crowded conditions that are too hot, with people sweating, and the inability to bathe properly.

Plaintiff contends that the heat is due, in part, by the use of an "air handler vent control device," that is in the control picket. These air handlers are used in the winter to warm the dorms, but plaintiff claims that the picket control officers turn the air handlers on during the summer just to make the inmates suffer even more heat. On June 18, 2008, the Garza East Unit Maintenance Department sent an inter-office communication to all inmates explaining that the air handlers were operating properly, that the air handlers were not on and did not turn on unless the outside temperature dropped below 65 degrees, and that the picket officers did not have access to the air handlers. (D.E. 1, at 14). Despite this memorandum, plaintiff argues that defendant Mark Garza should have disconnected the switch in the picket office so that the officers could not control the air handlers.

Plaintiff complains also that approximately half of the available restroom facilities do not work. The E-4 dorm, where plaintiff is currently housed, holds fifty-four men. The bathroom for those fifty-four men has eight sinks, but only five work. There are four showers, but only two work. There are four toilets, three of which work; and four urinals, three work. Plaintiff argues that, in combination with the temperature of over one hundred degrees, the non-working restroom creates an unsanitary breeding ground for infection and disease. He is convinced that he developed his Staph infection as a result of the conditions at the Garza East Unit.

Plaintiff testified that he repeatedly sent written complaints to Warden Kukua. However, defendant R. Tucker would give his complaints to Officer Esparza because they concerned maintenance matters, and Officer Esparza would then take his complaints directly to Mr. Garza,

3

the Maintenance Supervisor. Plaintiff claims that Tucker and Esparza were deliberately indifferent to his health and safety when they diverted his complaints away from the warden and assistant warden.

Plaintiff claims that the warden and assistant warden knew of the conditions in the dorms, despite the fact that his written complaints were misdirected, but that they took no steps to improve the conditions.

### III.  DISCUSSION

**A.     Legal Standard For A Civil Rights Action Pursuant To 42 U.S.C. § 1983.**

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.     Plaintiff's Eighth Amendment Claim Survives Screening Pursuant To § 1915A.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions

that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834.

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the 'objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson, 503 U.S. at 8. The challenged condition must be extreme. Id. at 8-9. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. Id. at 35. Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Id. at 36 (emphasis in original). The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347.

Second, the prisoner must show that the defendant prison officials "act[ed] with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8

(citation omitted).  The proper standard is that of deliberate indifference.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991).  Negligence does not suffice to satisfy this standard, <u>id.</u> at 305, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm would result."  <u>Farmer</u>, 511 U.S. at 835.  The <u>Farmer</u> Court defined the deliberate indifference standard:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Id.</u> at 837.  Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."  <u>Id.</u> at 844.

In <u>Chandler v. Crosby</u>, 379 F.3d 1278 (11th Cir. 2004), the Eleventh Circuit addressed Florida death row prisoners' claims that the hot temperatures in their cells during the summer violated the Eighth Amendment.  Like the Garza East Unit, the Florida prison had no air conditioning and, in the past, the Florida prison had run the air handlers in the summer to circulate the air.  <u>Id.</u>  at 1284.  An expert testified that the air handlers actually raised the temperature, but the inmates wanted the air handlers on because it felt cooler to have the air moving.  <u>Id.</u> at 1284 n.8.  However, the Florida prison stopped running the air handlers during the summer months.  <u>Id.</u> at 1284.  Similar to plaintiff's testimony, the expert testified that the temperature in the prison basically remained at a constant temperature, day or night, because the building had a slow thermal response compared with the outdoor temperature.  <u>Id.</u> at 1285. <u>Chandler</u> was ultimately decided on extensive summary judgment evidence in favor of the

prison; however, the evidence in that case established that temperatures did not get higher than 85 to 86 degrees.  Id.

In addition, the Fifth Circuit concluded decades ago that the Eighth Amendment forbids deprivation of the basic elements of hygiene.  Novak v. Beto, 453 F.2d 661, 665 (5th Cir. 1971). Similarly, other courts have determined that prison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation.  See, e.g., Toussaint v. McCarthy, 597 F. Supp. 1388 (N.D. Cal. 1984) (holding that conditions of confinement including leaking pipes and fixtures, clogged drains, rotting sewer lines, other plumbing deficiencies as well as heating and ventilation problems were unconstitutional); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992) (inmate not allowed out of "dry cell" more than once to defecate or urinate over a period of several days, plastic urinal not provided for 29 hours, inmate not allowed to empty urinal more than twice, no toilet paper raised material issues of fact regarding the constitutionality of his confinement).

Plaintiff's allegations of constant cell temperatures at 108 degrees for four months without adequate plumbing or other relief may indeed amount to conditions that are unhealthy or brutal pursuant to the Eighth Amendment.  As such, plaintiff has stated a claim for purposes of § 1915A screening.

## IV.  CONCLUSION

For purposes of § 1915A screening, plaintiff has stated viable conditions of confinement claims against defendants.  Accordingly, plaintiff's Eighth Amendment claims against Warden Kukua, Warden Garza, Supervisor Garza, Officer Esparza, and R. Tucker are retained and service shall be ordered on these defendants.

ORDERED this 19th day of September 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE